IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mark A. Henrikson, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 2:99-3586-23 |
| First Union National Bank, a federally chartered bank, f/k/a and d/b/a TMS, Inc., d/b/a The Money Store, and TMS Inc., | ) **ORDER** ) ) ) |
| Defendants. | ) ) |

    This matter is before the court on the Defendants' second motion for summary judgment. Defendants asks the court to dismiss Plaintiff's claims for (1) trespass, (2) conversion, (3) interference with economic relationships, and (4) violation of South Carolina Unfair Trade Practices Act ["SCUTPA"].

## **BACKGROUND**

    In 1993, Plaintiff applied for a loan from The Money Source[1] for his home in Las Vegas, Nevada. Plaintiff and Defendants executed a note for $67,800.00 to be paid at a rate of 9.5% interest for 30 years. The note was secured by a deed of trust establishing that the property would serve as collateral for the note. Plaintiff was to make monthly payments of $570.10 by the tenth day of each month beginning in October of 1993.

    Plaintiff was often delinquent in his payments from December of 1993 until Defendants

---

    1. Defendants note that they have been inaccurately identified in this action. The correct defendant is TMS Mortgage, Inc., a wholly owned subsidiary of the The Money Store, Inc., a wholly owned subsidiary of First Union National Bank. For the sake of clarity, the court will refer to The Money Store and First Union as "Defendants" throughout this order.

foreclosed on the property in October of 1996. By March of 1996 Plaintiff had fallen five months behind in his payments. At that time, Defendants transferred Plaintiff's file to John Symons in its foreclosure department. Defendants issued a Notice of Default and Election to Sell Under Deed of Trust and sent this notice by certified mail to the property address on or before April 5, 1996. Apparently, Plaintiff no longer lived in the Las Vegas home having moved to Charleston, South Carolina. He was renting the property during this period.

According to a computer maintained chronology referred to as "TPLS Comments," Symons spoke with Plaintiff on several occasions regarding his delinquency. Plaintiff made an attempt to remedy the situation beginning in June by making four payments reducing his delinquency to four payments in arrears. However, Plaintiff failed to make any payments in July or August of 1996.

Defendants issued a Notice of Trustee's Sale and sent this notice by certified mail to the Las Vegas property on August 13, 1996. The foreclosure sale was set for September 6, 1996. Symons spoke with Plaintiff in August regarding the account. The two worked out a payment plan and the scheduled foreclosure sale was postponed till October. The details of that payment plan are disputed. Plaintiff contends that he entered into an oral forbearance agreement which required Plaintiff to make double mortgage payments per month by the last day of each month until his account was current. Plaintiff further contends that this agreement was memorialized in writing by the forbearance agreement dated December 4, 1996. (Pl.'s Ex. 1.) Defendants contend that Plaintiff committed to make two full payments by September 5, 1996 and another by September 22, then two payments every month until the account was current.

Despite the parties' disagreement over the details of the payment plan, it is undisputed that Plaintiff made two payments in September, two payments in October, and two payments in November. In the meantime, on October 25, 1996, the house was sold and the renters living in the

property were subsequently evicted. Plaintiff learned of these circumstances sometime in November. On December 4, 1996, Defendants mailed to Plaintiff a written forbearance agreement signed by Defendants' agent Laurie Townsley, who had taken over Plaintiff's account, which called for two payments a month until the account was current beginning in October 1996. (Def. Ex. L.) This agreement was sent as part of an effort to possibly rescind the foreclosure. Plaintiff never signed this agreement. Defendants then abandoned any efforts to rescind the foreclosure.

Plaintiff filed a complaint in October of 1999 alleging (1) breach of contract, (2) interference with economic relationships, (2) conversion, (4) trespass, and (5) violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 38-57-10, *et seq.* Defendants filed a motion for summary judgment on all five of Plaintiff's causes of action. This court granted Defendants' motion, finding that Defendant was entitled to summary judgment as to Plaintiff's breach of contract action as a matter of law. Plaintiff appealed the Order. The Fourth Circuit issued an unpublished opinion in January 2005, reversing the grant of summary judgment on the basis that a genuine issue of fact existed as to whether or not a forbearance agreement existed at the time of the October 1996 sale of the property and as to whether or not the beneficial or legal interest in the property was completely transferred to the Bank of New York upon the October 1996 sale. The Fourth Circuit remanded the case to the district court for proceedings not inconsistent with its opinion.

Defendants now moves for summary judgment on Plaintiff's claims, except breach of contract, on grounds that Plaintiff cannot maintain causes of action for (1) violation of South Carolina's UTPA; (2) conversion; (3) trespass; and (4) interference with economic relationships. The court considers each claim in turn.

**STANDARD OF REVIEW**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

**ANALYSIS**

**(1) Nevada law governs this case; as such, Plaintiff's claim based on South Carolina Unfair Trade Practices Act ["SCUTPA"] must be dismissed.**

As an in initial matter, the court must determine the applicable state law in this diversity action. Because this case is before a Federal Court in the District of South Carolina, South Carolina

*choice* of law applies as to all claims. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941) (holding that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits). Under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law. *Bazzle v. Green Tree Financial Corp.*, 569 S.E.2d 349, 358 (S.C. 2002) ("Generally, if the terms of a contract are clear and unambiguous, this Court must enforce the contract according to its terms regardless of its wisdom or folly.") ; *see also Ellis v. Taylor,* 449 S.E.2d 487 (S.C. 1994). Where the contract is silent as to the law that applies, the *lex loci contractu* governs. In other words, if the contract be silent thereabout, the presumption is that the law governing the enforcement is the law of the place where the contract is made. *Livingston v. Atlantic Coast Line R.R.*, 180 S.E. 343 (S.C. 1935) ("The act of the parties in entering into a contract at a particular place. . . sufficiently indicates their intention to contract with reference to the laws of that place; hence . . . contracts are to be governed as to their nature, validity and interpretation by the law of the place where they are made, unless the contracting parties clearly appear to have had some other place in view.").

This case is controlled by Nevada substantive law because the governing Deed of Trust (1) explicitly states that it is to be governed by Nevada law and (2) was entered into in Nevada while Plaintiff was a resident of Nevada and concerns real estate located in Nevada. [Pl. Mot. Exhibit B] Because Nevada law governs the nature, validity and interpretation of the contract at issue[2] in this case, any claims based on the law of any other state are not viable. Accordingly, the court grants Defendant's summary judgment motion as to Plaintiff's SCUTPA claim.

---

2. As Defendant correctly notes, the forbearance agreement which Plaintiff claims Defendants breached does not modify the original Note, the Deed of Trust, which state that the law of Nevada governs.

**(2) Plaintiff's cause of action for conversion of real property is not viable.**

Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over another's *personal* property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc*., 116 Nev. 598, 606 (Nev. 2000) (quoting *Wantz v. Redfield*, 74 Nev. 196, 198, 326 P.2d 413, 414 (1958)). As such, an action for conversion lies only with respect to personal property; real estate and interests in real property are not subject to conversion. 18 Am.Jur.2d § 19; *see also Kremen v. Cohen*, 337 F.3d 1024, 1031, n. 7 (9th Cir. 2003) (holding that intangible interests in real property remain unprotected by conversion and a leasehold of real estate is not the subject of an action of trover).

In this case, Plaintiff has asserted a cause of action for conversion "of real property and chattels located thereon, including the lease agreement." (Pl. Compl. ¶ 21.) Plaintiff's counsel clarifies that the "chattels" referred to are (1) the improvements Plaintiff made to the house, such as french doors and a wrap-around porch, and (2) the rental income from the lease of the house. (Def. Mot., Exhibit E, at 88, lines 10-14.) These items are not chattels and are not proper subjects of a conversion claim.

The Nevada Supreme Court has stated that the three factors to determine whether an item is a fixture are annexation, adaptation, and most importantly, intent. *Fondren v. K/L Complex, Ltd.,* 106 Nev. 705, 710, 800 P.2d 719, 722 (1990). The annexation test is met where the chattel is actually or constructively joined to the real property. *Id.* The adaptation test is met when the object in question is adapted to the use to which the real property is devoted. *Id.* However, the most important factor in making the determination of whether an item is a fixture is the intention of the parties at the time the items were installed. *Id.; Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 185 - 86 (Nev. 1997). Under this test, the improvements

Plaintiff made to the property are fixtures, not chattels. Improvements that are built into a home, such as a porch and french doors, are annexed to the property, adapted to the specific needs of the property and are intended to remain with the property. Accordingly, such improvements are fixtures and are considered part of the real property. *See Fondren v. K/L Complex Ltd.*, 800 P.2d 719, 722 (Nev. 1990) (holding that booths, wine cabinets and other items were fixtures because they were physically attached to the building and had become a part thereof, they were custom built, and builder intended for them to be left).

A lease agreement and the accompanying right to lease payments are likewise considered to be an interest in real estate. *Sportsco Enterprises v. Morris*, 917 P.2d 934 (Nev. 1996) (holding that a judgment debtor's interest in sports box, which was used to watch basketball games at university, was a lease, and thus was a property interest). As such, a lease agreement cannot be subject to conversion.

Plaintiff fails to identify any chattels that Defendants have allegedly converted. As such, considering the facts in the light most favorable to the Plaintiff, there is no way Plaintiff's claim for conversion can succeed as a matter of law. The court therefore grants Defendant's motion for summary judgment as to Plaintiff's conversion claim.

**(3) As Plaintiff had no right to possession at the time of foreclosure, he cannot maintain an action for trespass.**

On a fundamental level, trespass to real property is an injury to the right to possession. 75 Am.Jur.2d § 36. In order to sustain an action in trespass, the Plaintiff must be in actual or constructive possession of the land on which the act of trespass has been committed. *Id.* Where a landlord has granted possession to a tenant for a definite term, the landlord has no immediate right of possession and cannot maintain an action for trespass during the term of the lease. 75 Am.Jur.2d

Trespass § 39.

Here, Plaintiff, the owner and landlord of the property, claims that Defendants trespassed upon the property by causing his tenants to be evicted and foreclosing on the property allegedly without notice and in alleged violation of the forbearance agreement. (Pl. Comp. ¶ 24.) Because this alleged act of trespass occurred during the term of a lease, the tenants in possession are the proper parties to assert the trespass claim, not the landlord. This conclusion is supported by Nevada law.[3] *Simpson v. Williams*, 18 Nev. 432, 435-436 (1884) ("[W]hen land is in the hands of a tenant, the person to sue for a trespass is the tenant, and not the landlord."). Because Plaintiff had no possessory interest in the property at the time of alleged trespass, he, as a matter of law, cannot assert this trespass action. Accordingly, the court grants Defendant's motion for summary judgment as to Plaintiff's trespass claim.

**(4) Plaintiff fails to show the requisite intent to establish a claim for intentional interference with economic relationships.**

In this case, Plaintiff asserts a breach of contract claim for the alleged breach of the forbearance agreement between Plaintiff and Defendant. In wrongfully foreclosing on Plaintiff's property, Plaintiff asserts that Defendant interfered with the economic relationship between Plaintiff and his tenants by evicting the tenants. As such, Plaintiff also asserts a claim of intentional interference with economic relationships against Defendant.

In Nevada, to maintain a cause of action for intentional interference with economic relations, the plaintiff must show: (1) a valid and existing contract between plaintiff and a third party; (2) the

---

3. Plaintiff cites a Nevada case, *Bates v. Nevada Sav. & Loan Ass'n*, 85 Nev. 441 (1969), to support his contention that a landlord may sue for trespass. In the case cited by Plaintiff, however, the landlord was suing his tenant for trespass after the tenant had breached the lease-agreement. *Id.* This case does not stand for the assertion that a landlord may sue a third party who infringes on the tenants' present right to possession.

defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *Sutherland v. Gross,* 105 Nev. 192, 772 P.2d 1287, 1290 (1989). As explained by a Federal District court in Nevada, "[a]t the heart of [an intentional interference] action is whether Plaintiff has proved intentional acts by Defendant intended or designed to disrupt Plaintiff's contractual relations." *Nat. Right to Life P.A. Com. v. Friends of Bryan,* 741 F.Supp. 807, 814 (D.Nev. 1990); *see also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*, 867 F.Supp. 920, 925 (D.Nev. 1994). The fact of a general intent to interfere, under a definition that includes imputed knowledge of consequences, does not alone suffice to impose liability. *Nat. Right to Life P.A. Com.*, 741 F.Supp. at 814. Inquiry into the motive or purpose of the actor is necessary to ascertain whether the acts were 'intentional.' *Id.* Where the actor's conduct is not criminal or fraudulent, and absent some other aggravating circumstances, it is necessary to identify those whom the actor had a specific motive or purpose to injure by his interference and to limit liability accordingly. *Id*. The extent of liability, for this tort, is fixed in part by the motive or purpose of the actor. *Id.; see Restatement (Second) of Torts* § 766 Comment j and § 767 Comment d (1979).

Applying these principles of law to the present case, the court holds that a reasonable fact-finder could not find that Defendant foreclosed on Plaintiff's property *for the purpose of* interfering with Plaintiff's economic relationship with his tenants or other culpable motive. While Defendants certainly knew that their actions would result in a termination of the lease between Plaintiff and the tenants, such a result cannot be said to have been the motivation behind Defendants' decision to foreclose. As Nevada law makes clear, "[t]he inducement of a breach does not always vest third or incidental persons with a tort action against the one who interfered." *Nat. Right to Life P.A. Com.*, 741 F.Supp. at 814. The evidence presented to this court shows that Defendants' purpose in

foreclosing on Plaintiff's property was to acquire Plaintiff's property and thereby secure the debt owed to it; the interference with the landlord-tenant relationship was merely incidental to this purpose.[4] Plaintiff has made no adequate showing that Defendants were motivated by an intent to interfere with existing economic relationships or other culpable motive; as such, Defendants' action cannot be said to be an 'intentional act' as required under Nevada law.[5] Accordingly, because Plaintiff fails to make a showing sufficient to establish the existence of an element essential to his claim, the court grants Defendant's motion for summary judgment as to Plaintiff's intentional interference with economic relationships claim.

---

4. F. Harper, F. James & O. Gray, *The Law of Torts* § 6.8, at 318- 20 (2d ed. 1986), in pertinent part offers the following discussion of the tortious intention required to sustain a finding of liability:

> But often, the actor will act with knowledge that his conduct will cause a breach of a contract between the plaintiff and a third person although he is not acting primarily to bring about that result or to obtain for himself the benefit of that contract. The actor seeks to gain some other objective of his own, the breach of the contract being a certain but incidental result of his action.... Such mixed motives often present difficult policy decisions. They can be handled under the issue of privilege where, along with other factors, they are pertinent to the question whether the actor is justified in conduct that he knows will necessarily or probably result in the loss of contractual advantages to an innocent third person. Or they can be approached under the second Restatements concept that the actor, to be subject to liability, must interfere not only 'intentionally' but also 'improperly.' Knowledge that an act directed at one person is also 'substantially certain' to lead to interference with a contract between that person and another makes that consequence 'intended' in Restatement nomenclature, but more in the way of *culpable motive* is required to constitute the tort as it is therein described.

5. Certainly, if Defendant is found to have wrongfully breached the forbearance agreement, Plaintiff is entitled to consequential damages that include his loss of rental value; however, contrary to Plaintiff's contention, breach of contract alone, even negligent breach of contract, does not evidence an improper motive that would support a tort claim.

## CONCLUSION

It is, therefore,

**ORDERED**, for the foregoing reasons, that Defendant's Motion for Summary Judgment as to Plaintiff's Causes of Action Two (Interference with Economic Relationships), Three (Conversion), Four (Trespass) and Five (South Carolina Unfair Trade Practices Act) is **GRANTED.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**October 7, 2005**